IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | | |
|---|---|---|
| TINA L. AMAYA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 7:07-CV-008-BH |
| | § | ECF |
| MICHAEL J. ASTRUE | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | Consent Case |

## MEMORANDUM OPINION AND ORDER

Pursuant to the consent of the parties and the District Court's *Order of Reassignment*, dated April 2, 2007, this case been transferred to the undersigned United States Magistrate Judge for the conduct of all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c). Before this court are *Brief for Plaintiff* ("Pl. Br."), filed June 18, 2007, and *Defendant's Response to Plaintiff's Brief* ("Def. Br."), filed October 4, 2007. Plaintiff did not file a reply. Having reviewed the evidence of the parties in connection with the pleadings, the Court finds that the final decision of the Commissioner should be **AFFIRMED**.

### I. BACKGROUND[1]

**A.** **Procedural History**

Tina Amaya ("Plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her claim for disability benefits. Plaintiff filed an application for disability benefits under Title XVI of the Social Security Act on November 4, 2003,

---

[1] The following background comes from the transcript of the administrative proceedings, which is designated as "Tr."

- 1 -

claiming that she was disabled due to anxiety and severe depression. (Tr. at 15, 17). Plaintiff's application was denied initially and upon reconsideration. (Tr. at 24-28, 34-36). Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 38). A hearing, at which Plaintiff personally appeared and testified, was held on November 17, 2005. (Tr. at 171). On May 8, 2006, the ALJ issued his decision finding Plaintiff not disabled. (Tr. at 12-21). The Appeals Council denied Plaintiff's request for review, concluding that the contentions raised in Plaintiff's request for review did not provide a basis for changing the ALJ's decision. (Tr. at 3-5). Thus, the ALJ's decision became the final decision of the Commissioner. (Tr. at 3-5). Plaintiff timely appealed the Commissioner's decision to the United States District Court pursuant to 42 U.S.C. § 405(g) on January 12, 2007.

**B.     Factual History**

    **1.     Age, Education, and Work Experience**

Plaintiff was born on January 1, 1971. (Tr. at 175). She has a tenth grade education. (Tr. at 101). She previously worked as a housekeeper, legal secretary, customer service representative, telephone solicitor and polisher/grinder at a factory. (Tr. at 84-89, 96). Plaintiff last worked on July 14, 1996. (Tr. at 55).

    **2.     Medical Evidence**

On March 7, 2004, Plaintiff was taken to a hospital emergency room in Wichita Falls, Texas, following an intentional overdose of Xanax. (Tr. at 159). Her physical examination was unremarkable, but Plaintiff's behavior pattern was termed "anxious." *Id*. Plaintiff was discharged the same day by Dr. Phillip E. Chapa, with a diagnosis of "benzodiazepine overdose--intentional; suicide gesture." (Tr. 159-160).

On March 30, 2004, Plaintiff was seen by Dr. Jack D. Tomlinson, M.D., a psychiatrist acting as a consultative examiner for the Commissioner. (Tr. at 100). Plaintiff told Dr. Tomlinson that she had been seeing Dr. Henry Sanchez-Leal, M.D., a psychiatrist, "for the past eight years" and was taking Xanax and Remeron prescribed by him. (Tr. at 101). Plaintiff advised him that she was "able to bathe, dress and groom herself [and] do some cooking, some cleaning, and some laundry but that she does not really go shopping because I can't be around people." (Tr. at 102). Plaintiff also stated that she was "unable to use public transportation, she has a driver's license and sometimes drives, but does not own her own vehicle,"and was able to handle her own financial affairs although she did not have a bank account. *Id*. Dr. Tomlinson noted Plaintiff to be a "sad, depressed lady who appeared to be in no acute distress." (Tr. at 103). While her mood was depressed and her affect very flat, her speech was spontaneous, logical, and coherent. *Id*. Her psychomotor activities were about average, and her judgment seemed fair. *Id*. She denied suicidal and homicidal thoughts at the time, and appeared to be of at least average intelligence and goal-directed in thinking. *Id*.

On April 22, 2004, Dr. Mehdi Sharifian, M.D., a non-examining state agency medical consultant ("SAMC"), evaluated the Plaintiff and found her "moderately limited" in her abilities to: (1) understand, remember, and carry out detailed instructions; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) interact appropriately with the general public; (4) accept instructions and respond appropriately to criticism from supervisors; and, (5) get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (Tr. 120-122).

Dr. Sherifian's opinions were affirmed on July 26, 2004, by Dr. Stephanie Judice, M.D., another SAMC. (Tr. 120). Dr. Sharifian also stated the Plaintiff was "not significantly limited" in

her abilities to: (1) understand, remember and carry out simple and short instructions, (2) maintain attention and concentration for extended periods, (3) perform activities within a schedule, (4) make simple work related decisions, (5) maintain socially appropriate behavior and (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 121-122).

### 3. Hearing Testimony

A hearing was held before the ALJ on November 17, 2005. (Tr. at 171-195). Plaintiff appeared personally and was represented by an attorney. *Id*.

#### *a. Plaintiff's Testimony*

Plaintiff testified that she was born on January 1, 1971, and had a tenth grade education. (Tr. at 175). She had not obtained a GED certification, but had been through special job training to be an office assistant. (Tr. at 175-176). She confirmed she had worked as a secretary at a law office for about seven months, that her last full-time job was in 1996 in customer service at "Service Loan" for a year and a half, and that she had also worked in housekeeping. (Tr. at 177-178). Plaintiff testified that ever since a miscarriage in 1996, she had suffered from depression and anxiety. (Tr. 178-179). She had panic attacks "maybe four, four or five times a week," she hyperventilated in the course of the attacks, and it was "maybe 20, 30 minutes" until she calmed down. (Tr. at 180-181).

As to her memory, Plaintiff stated that "it's gotten to that point where I have to be reminded." (Tr. at 181). Plaintiff testified that she saw Dr. Henry Sanchez-Leal, a psychiatrist, and that she took Xanax and Remeron for her anxiety. (Tr. at 186). Plaintiff stated that she averaged about five or six hours of sleep a night, and that she was able to drive sometimes, depending on her

anxiety level. (Tr. at 183). Plaintiff also stated that she had a prior application in 2000 which was dismissed because she failed to show up at her hearing. (Tr. at 186). Although she came to the hearing with her daughter and grandson, Plaintiff testified that she drove herself. (Tr. at 188-189).

### b. *Vocational Expert's Testimony*

Clifton A. King, Jr., a vocational expert ("VE") testified during the hearing that plaintiff's past relevant work experience included (1) customer service representative (light, SVP of 6, skilled work), (2) polisher and grinder in a factory (medium, SVP of 2, unskilled), (3) housekeeper (light, SVP of 2, unskilled), (4) telephone solicitor (SVP of 3, semi-skilled) and most recently, (5) secretary (SVP of 6, skilled) (Tr. at 190).

In addition to his testimony describing Plaintiff's past jobs at the administrative hearing, the VE provided written answers to interrogatories sent to him after the hearing by the ALJ. In his interrogatories, the ALJ asked the VE to assume:

> "that a person is thirty five (35) years old, has a limited education and the job training and the work experience of the claimant [as described by the VE at hearing]...and to further assume there are no physical limitations but that there are non-exertional limitations as follows: on a scale of 'Not Significantly Limited,' 'Moderately Limited' and 'Markedly Limited,' the person has Moderately Limited ability: to understand and remember detailed instructions; to carry out detailed instructions; to perform activities with a schedule, maintain regular attendance, and be punctual with [sic] customary tolerances; to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes, but the claimant can still understand, remember and carry out very short and simple instructions."

(Tr. at 96). The VE opined that the stated limitations would eliminate Plaintiff's past jobs entitled customer service representative, telephone solicitor and secretary, but would not eliminate the two jobs of polisher/grinder and housekeeper. (Tr. at 96-97).

**C.     ALJ's Findings**

The ALJ issued his decision denying benefits on May 8, 2006. (Tr. at 12-21). The ALJ determined that Plaintiff had not engaged in substantial gainful activity ("SGA") since the alleged onset date of disability, July 14, 1996, but that allegations of significant limitations in Plaintiff's ability to perform basic work activities were not credible to the extent alleged. (Tr. at 17, 20). Although Plaintiff had some work-related limitations, the ALJ was not persuaded that her impairments precluded her from engaging in all SGA. *Id*. While Plaintiff had a history of depression and anxiety, the ALJ found she had the ability to understand, remember and carry out detailed but not complex instructions, make decisions, attend and concentrate for extended periods, accept criticism and respond appropriately in a routine work setting. (Tr. at 17). The ALJ remarked that Plaintiff had admitted that she was doing better and had decreased one of her medications. (Tr. at 19). The ALJ further noted that a review of Dr. Sanchez-Leal's report indicated that Plaintiff had some counseling for her depression and panic orders, but had no restrictions placed on her. (Tr. at 20). The ALJ placed great weight on Dr. Sanchez-Leal's opinion since he had been the only doctor she had seen for mental health treatment. *Id*.

The ALJ determined that Plaintiff retained residual functional capacity ("RFC") for all levels of work activity and that she had no physical limitations. *Id*. Regarding her RFC, the ALJ noted the SAMC's opinion that Plaintiff had moderate restrictions of activities of daily living, moderate difficulties in maintaining social functioning, only mild difficulties in maintaining concentration and persistence of pace, and no repeated episodes of decompensation. (Tr. at 20, 116). While Plaintiff had a history of depression and anxiety, the ALJ found Plaintiff had the ability to understand, remember and carry out detailed but not complex instructions, make decisions, attend and

concentrate for extended periods, accept criticism and respond appropriately in a routine work setting. *Id*. The VE stated that the claimant had past relevant work as a customer service representative, which is light, skilled work at the SVP-6 level; as a polisher/grinder, which is medium, unskilled work; as a housekeeper, which is light, unskilled work; as a telephone solicitor, which is sedentary, semiskilled work at the SVP-3 level; and as a secretary, which is sedentary, skilled work at the SVP-6 level. (Tr. at 21). In comparing Plaintiff's RFC with the physical and mental demands of this work, the ALJ determined the claimant could perform her past relevant work as a polisher and grinder and as a housekeeper as they were actually and generally performed in the economy. *Id*. As a result, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. *Id*.

## II. ANALYSIS

### A. Legal Standards

#### 1. Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g), 1383(C)(3). Substantial evidence is defined as more than a scintilla, but less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). In applying the substantial evidence standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding

of no substantial evidence is appropriate only if there is a conspicuous absence of credible evidentiary choices or contrary medical findings to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759 F.2d 432, 435 (5th Cir. 1985). Moreover, the relevant law and regulations governing the determination of disability under a claim for disability insurance benefits are identical to those governing the determination under a claim for supplemental security income. *See id*. Thus, the Court may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *See id*. In exercising review, the burden of proving disability is on the claimant. *Davis v. Schweiker*, 641 F.2d 283, 285 (5th Cir. 1981).

### 2. Disability Determination

To be entitled to social security benefits, a claimant must prove that he or she is disabled as defined by the Social Security Act. *Leggett*, 67 F.3d at 563–64; *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled:

1. An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2. An individual who does not have a "severe impairment" will not be found to be disabled.

3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4. If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)). Under the first four steps of the inquiry, the burden lies with the claimant to prove disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.    Issue for Review**

Plaintiff presents a single issue for determination:

"Whether the ALJ's finding that Plaintiff could perform two 'past relevant' jobs despite her limitations, and was thus not disabled, is supported by substantial evidence."

(Pl. Br. at 7).

## C. <u>Issue One: Past Relevant Work</u>

Plaintiff contends, in particular, that the ALJ's finding that she could perform past relevant jobs is not supported by substantial evidence because neither job constituted SGA since she did not earn over $500 a month. (Pl. Br. at 9).

In order for a claimant to be found "not disabled" at Step 4 of the sequential disability determination process, a claimant must be able to perform past relevant work. 20 C.F.R. § 416.920 (a)(4)(iv)(2007). Past relevant work is work performed by a claimant within the past 15 years that is SGA and lasted long enough for the claimant to learn to do it. 20 C.F.A. § 416.960 (b)(1)(2007). Work is considered to be gainful if it is the kind of work usually done for pay or profit, whether or not the profit is realized. 20 C.F.R. § 416.972 (b). Generally, the primary consideration in determining whether work was SGA is earnings. *White v. Heckler*, 740 F.2d 390, 394 (5th Cir. 1984) (regulations set forth earnings presumed to be evidence of SGA); 20 C.F.R. § 416.974 (a)(1)(2007).

For the period from January 1990 through June 1999 (the period relevant to Plaintiff's last employment), employee earnings averaging over $500 a month were considered SGA. 20 C.F.R. § 416.974 (b)(2)(i)(2007). A claimant whose average monthly earnings were equal to or less than five hundred dollars will generally be found to have not engaged in SGA. 20 C.F.R. § 416.974 (b)(3)(i)(2007). Conversely, earnings in excess of $500 a month create a rebuttable presumption that the claimant has been engaged in SGA. *Rutherford v. Shalala*, 43 F.3d 670 (5th Cir. 1994). This presumption, if unrebutted by a claimant, results in a finding that a claimant is able to engage in substantial activity. *Davis v. Schweiker*, 641 F.2d 283, 286 (5th Cir. 1981).

Plaintiff contends that her past jobs were not SGA since she did not earn more than $500 a month at either job. (Pl. Br. at 9). In a work history report signed by Plaintiff and dated December 18, 2004, Plaintiff stated she worked as a "housekeeper" at a hotel in 1994, and as a "finisher" in a factory in 1995. (Tr. at 84). Plaintiff stated her housekeeper job paid $4.75 per hour, 30 hours per week, 5 days per week. (Tr. at 86).[2] With respect to the finisher job, Plaintiff reported pay of $7.00 per hour, 8 hours per day, 40 hours per week. (Tr. at 88).[3] According to Plaintiff's testimony, her housekeeper job would net $142.00 a week and approximately $617.00 a month.[4] Her finisher job would net $280.00 a week and $1,213.33 a month.[5] Thus, according to Plaintiff's own statements, the ALJ's determination that both jobs were SGA is supported by substantial evidence. 20 C.F.R. § 416.974; *Leggett*, 67 F.3d at 236. Further, reliance on Plaintiff's testimony in the case at bar is justified and different from situations where claimants clearly do not earn the minimum amount for SGA. *Vincent v. Apfel*, 264 F.3d 767, 769 (8th Cir. 2001).

Because Plaintiff failed to rebut findings that she earned over $500.00 a month in her two past jobs of "housekeeper" and "polisher/grinder," resulting in a presumption that her earnings constituted SGA, she has failed to meet her burden at Step 4 of the sequential disability determination process to prove disability. *Schweiker*, 641 F.2d at 286; 20 C.F.R. § 416.960 (a)(4)(iv)(2007). Thus, the ALJ correctly ended his analysis at step 4, and the Court need not

---

[2] While the Work History Report states that Plaintiff worked "30 hours per day," Plaintiff's counsel notes that it should have stated 30 hours per week. (Tr. at 88; Pl. Br. at 8).

[3] While the Work History Report states that Plaintiff worked "40 days per week," Plaintiff's counsel notes that it should have stated 40 hours per week. (Tr. at 88; Pl. Br. at 8).

[4] The Court arrived at the calculation as follows: $4.75 per hour times 30 hours per week equals $142.50, times 52 weeks per year equals $7,410.00, divided by 12 months equals $617.50 per month

[5] The Court arrived at the calculation as follows: $7.00 per hour times 40 hours per week equals $280.00, times 52 weeks in a year equals $14,560.00, divided by 12 months equals $1,213.33 per month

consider the issue of whether Plaintiff's limitations permit performance and maintenance of any other work existing in significant numbers in the national economy. *Cooper v. Barnhart*, 55 Fed. Appx. 716, 2002 WL 31933144 (5th Cir. 2002) (whether substantial gainful work is available in the national economy is relevant only at step 5).

### III.  CONCLUSION

For the foregoing reasons,  the final decision of the Commissioner is **AFFIRMED**.

**SO ORDERED**, on this 19th day of June, 2008.

 IRMA CARRILLO RAMIREZ
 UNITED STATES MAGISTRATE JUDGE